**STANDARD RICE CO. v. WILLIAM M. GARIC & CO.** (No. 8672.)

(Court of Civil Appeals of Texas. Galveston. June 17, 1925.)

**1. Sales ☞32—Telegrams, between rice dealer and broker together with written instrument to alleged buyer, held to constitute contract for sale.**

In action to recover damages by failure to deliver rice at a certain time, telegrams, between alleged seller and his broker, together with written instrument from both these parties to alleged buyer, *held* to constitute contract for sale.

**2. Brokers ☞8(3)—Evidence held sufficient to sustain finding that broker acted as agent of seller.**

In action to recover damages for failure to deliver rice at a certain time, evidence *held* sufficient to sustain finding that broker acted as agent of seller.

**3. Sales ☞417 — Evidence held sufficient to sustain finding, that no notice of refusal to deliver pursuant to contract was given, until time alleged in complaint.**

In action to recover damages for failure to deliver rice at certain time, evidence *held* sufficient to sustain finding, that buyer was not notified that seller would not deliver pursuant to contract, until time alleged in complaint.

**4. Sales ☞418(2)—Damages for failure to deliver rice held properly measured with reference to prevailing price at time of notice of refusal of delivery.**

Damages for failure to deliver rice at a certain time *held* properly measured with reference to market value, prevailing at time notice was given of refusal of delivery where it appeared

that such time was a reasonable date to expect delivery.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by William M. Garic & Co. against the Standard Rice Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Lewis Wood, of Houston, for appellant.

Gill, Jones & Tyler, and Hugh Potter, all of Houston, for appellee.

GRAVES, J. This statement, conceded by the opposing litigant to be substantially correct, is taken from appellant's brief:

"This is a suit brought in the district court of Harris county, Texas, by William M. Garic & Co. v. Standard Rice Company for damages sustained by reason of failure on the part of appellant to make delivery of certain rice ordered by said appellee from appellant in which plaintiff in the court below alleged: That on or about October 30, 1919, through the medium of letters, cablegrams, and oral and written confirmations dated on and during the several days preceding the last above date, all of which documents to be introduced in evidence upon the trial of this cause, the defendant in the court below sold and contracted to deliver, and the plaintiff bought and contracted to pay for, 1,000 pockets of its No. 906 rice at $8.50 per pocket c. i. f. San Juan, Porto Rico, shipment from Houston mill of said defendant to be during the month of November 1919, and c. i. f. meaning that the cost of the rice, the insurance and freight to San Juan were included in the price quoted on rice to be delivered to plaintiff at San Juan, Porto Rico. The transactions connected with and resulting in said contract being conducted through M. Barrios & Co., agents of defendant in San Juan with expressed or implied authority to negotiate such contract, which authority defendant is estopped to deny and which contract was ratified by defendant; that when plaintiff failed to receive said rice during the month of December, 1919, or during the early part of January, 1920, at which time its arrival would be expected, if shipped from the Houston mill of defendant during the month of November, plaintiff made several inquiries as to the delays and repeatedly requested delivery of the said rice, notwithstanding which said rice was not delivered and was never shipped by defendant.

"The plaintiff was first notified of defendant's intention not to ship said rice on or about January 21, 1920, all the time prior to that time being under the impression and expectation that the rice might arrive at almost any time; but on or about that date plaintiff was definitely notified by the defendant's agent that defendant had not shipped and would not ship the said rice under said contract; that on or about January 21, 1920, and several days prior thereto the market value at San Juan, Porto Rico, of rice of the kind and quality contracted to be delivered to plaintiff was $11.25 per pocket; that by reason of the failure and refusal of the defendant to carry out the terms of said contract, etc., plaintiff has been damaged in the

sum of the difference between the contract price and the market price of the rice of the kind and quality in question at the time and place of delivery, to wit, $2,750 with 6 per cent. interest from said January 21, 1920.

"To which pleading of the plaintiff the defendant answered and set up the following defenses: First. By a general exception, and second, by special demurrer, because plaintiff's pleadings are vague and indefinite and the letters, cablegrams, and confirmations and conditions thereof are not set forth to enable defendant to properly answer thereto, third, by general denial, and fourth, by special answer, setting out as follows, to wit: That on or about October 28, 1919, defendant received certain tentative propositions for purchase of rice from its brokers, M. Barrios & Co. at Porto Rico, by cablegram offering to purchase certain pockets of rice of defendant, being No. 906 rice at $8.50 per pocket c. i. f. San Juan, Porto Rico, for account of plaintiff, to which propositions defendant replied on the 28th day of October that he could furnish the rice to fill such orders for November shipment, from the mill, which said offer it was agreed and understood, in order to be binding on this defendant was to be confirmed by cablegram within 24 hours from the time said message was delivered for transmission at Houston, Texas, and that defendant received no answer confirming said proposition until October 31, 1919, and that not having its offer accepted and confirmed within 24 hours from the time of transmission of cablegram continuing the offer that the defendant was under no obligation to fill said offer after said time, and that when cablegram was received on 31st of October attempting to confirm defendant's proposition, this defendant was not in position to fill the said order, but that he was in position and would have filled same had transmission reached him within the 24 hours above specified.

"And defendant further sets out that all the transactions alleged in plaintiff's petition were done by and through brokers, M. Barrios & Co., and says that the said M. Barrios & Co. were not at any time general agents of this defendant, but acted for this defendant and many other business concerns in the capacity of general brokers, and that if the said M. Barrios & Co. attempted to confirm any sale for the rice with the plaintiff herein at the time and manner alleged in plaintiff's petition, that they did so without authority from the defendant to bind it in any manner under the terms of employment, by the defendant as defendant's general brokers in Porto Rico; that under the terms of the employment of said M. Barrios & Co. by defendant, among other things, it was stipulated as follows: 'That all quotations and prices transmitted by the Standard Rice Company are to be valid for acceptance reaching the mill within the next 24 hours after the time of the dispatch of the cable containing such prices or quotations, from its office.' And the defendant alleged that if said Barrios & Co. made any contract for the shipment of rice, as set forth in plaintiff's petition, with plaintiff, that they did so without power or authority to bind this defendant, because the defendant's offer, sent on the 28th of October, was not accepted or confirmed within said 24 hours and no attempted confirmation or acceptance of said defendant's offer was received by defendant until the 31st day of October, two days after the time for such acceptance and confirmation had expired, all of which conditions were known to plaintiff or by reasonable diligence could have been so known to him.

"Defendant by trial amendment to original answer further pleaded in the alternative as follows: That if for any reason the plaintiff is not bound by the provisions for acceptance of an offer within 24 hours after the date of the dispatch of the cable, containing prices and quotations, that then defendant says that it is and was the general custom in October, 1919, of merchants and dealers at San Juan, Porto Rico, and well known to the trade, that no offer made by a broker is binding on the seller until the same has been confirmed by the seller.

"Wherefore, defendant denied that he had ever entered into any contract with plaintiff for the shipment of said rice, or that he had ever authorized said Barrios and Company or any one else to bind it by any contract, and defendant prays that he have judgment in his favor.

"The defendant further impleaded the Postal Telegraph & Cable Company and prayed that if there was any judgment received by plaintiff against this defendant that the defendant have judgment over and against said Telegraph & Cable Company on account of its negligence and delays in transmission and delivery of cablegrams in question, and that the court sustain the demurrer filed by the Postal Telegraph & Cable Company and render judgment in favor of said company for its costs, and that they go hence without day.

"On trial of said cause on the 15th day of February, 1924, in the district court of Harris county, Texas, the court rendered this judgment against the appellant herein and in favor of William M. Garic & Co. for the sum of $3,120 with 6 per cent. interest per annum from date of said judgment."

We think the questions, necessary to the determination of the appeal, depend upon whether or not the evidence was sufficient to support these two findings of fact by the trial court:

"(2) The cables and letters in evidence, together with the confirmation of October 30, 1919, delivered by the broker, Barrios & Co., to the plaintiff, Wm. M. Garic & Co., constituted a contract for the sale and delivery of 1,000 pockets No. 906 rice at $8.50 per pocket c. i. f. San Juan, Porto Rico, to be shipped at any time during the month of November from the Houston mill of the defendant, Standard Rice Company."

"(5) Plaintiff, Garic & Co., was not notified until after January 1, 1920, of defendant, Standard Rice Company's intention to refuse delivery of the rice under the contract."

If the communications that passed between the parties did constitute such a contract, and notice of its repudiation was not brought home to the appellee until after January 1, 1920, a breach thereof to the latter's damage in the sum found by the trial court, that is, an amount representing the difference between the contract price of the rice and its market value at San Juan at the time of the

receipt of such notice, was shown by the undisputed evidence and appellee was entitled to the judgment obtained.

As the statement of its pleadings has presaged, appellants' position is that it was not bound, in that it never consummated any contract for the sale and shipment of the rice, either direct or through Berios & Co., who were only general brokers with whom it was dealing, and not its agents in the transaction; that it merely, on October 28, 1919, in response to a tentative proposal of purchase from these brokers, replied that it could fill the proposal for November shipment, such response or order ·being agreed and understood between it and them—as well as so fixed by the general custom then in vogue at Porto Rico—to be binding on it only in event it received confirmation thereof at Houston, Tex., within 24 hours after sending the same from there, which it did not do, no confirmation being received until October 31.

From the brief of the appellee, we take a chronological summary of the cables affecting the transaction between appellant and Berios & Co., inclusive of a statement of the dates of the receipt thereof, as follows:

"No. 1. Cable of October 18th (Exhibit A), from Berios to Standard (private code): '500 Pockets No. 906 Malgor Luina shipment first half next month at $6.85 price c. i. f. request you samples must be at least five pound cotton bags.'

"No. 2. Cable of October 21 (Exhibit B), from Standard to Berios: '$8.50, 906 crop greatly damaged by storms. The market has advanced. Sending additional samples.' (This cable was received by Berios October 23.)

"No. 3. Cable of October 23 (Exhibit D), from Berios to Standard: '10,000 pockets No. 906, new buyer San Juan two shipments beginning first half next month $8.50. 500 pockets No. 906 Malgor & Luina November shipment at $8.50.'

"No. 4. Cable of October 24 (Exhibit E), from Standard to Berios: 'We confirm the sale your telegram of October 24th, 906 at $8.50 provided shipment per steamer during November.' (This telegram was received by Berios October 26.)

"No. 5. Cable of October 27 (Exhibit G), from Berios to Standard: 'Your telegram is unintelligible, please repeat immediately.'

"No. 6. Cable of October 28 (Exhibit H), from Standard to Berios: 'Your telegram of October 23 is unintelligible repeat immediately. We confirm the sale 906 if November shipment from the mill, answer.' (This telegram was received by Berios October 30.)

"No. 7. Cable of October 30 (Exhibit J), from Berios to Standard: 'We confirm the sale 1,500 pockets 906 $8.50 November shipment from mill. We can sell 2,000 bags 904 $9.75.'

"No. 8. Cable of October 31 (Exhibit K), from Berios to Standard: '500 pockets No. 906 A. Vincente & Co. November shipment at $8.50 from mill.'

"No. 9. Cable of November 1 (Exhibit L), from Standard to Berios: 'Cannot offer 906 at present.' (This cable was received by Berios on November 4.)"

On October 30, 1919, Berios & Co. delivered to appellee this confirmatory document:

"M. Berios & Co. S. 3n C., Agents, San Juan, October 30/19. Messrs. Wm. M. Garic & Co., San Juan, Firm Sale No. 74. Dear Sirs: We have the pleasure to inform you that your offer entered in our books under No. 89 has been accepted 1,000 sacks (pockets) rice No. 906 at 8½ c. i. f., San Juan, two shipments from the mill in November, payment: against bill of lading.

"The general conditions which govern this sale· are those established by the seller. Naturally the seller is not liable in case of force majeure.

"The sale if c. i. f. is understood on a basis of the freight in force on the acceptance, the difference, if there is any, for the account of the purchaser.

"Thanking you very much, and awaiting to· have soon an opportunity to serve you, we remain, Yours very truly, M. Berios & Co., Agents for the sellers. Mention the number of· this order in referring to it."

[1] We agree with the trial court that these messages, together with the paper from Berios & Co. confirmatory of what they imported, constituted a complete contract for the sale and purchase of the rice between the· litigants here. Appellant's insistence to· the· contrary may not, we think, be better answered than is thus done in the able brief filed here by counsel for the appellee.

"(1) The cable service at the time in question was not such as to render probable (or even possible perhaps) the transmission of a cable message from Houston to Porto Rico and. the delivery of a reply thereto back to the sender in Houston within 24 hours from the time of the filing of the first message. No cable, among all of those introduced in evidence, was transmitted with any such speed, and the very cable itself of October 28 (No. 6 in the list above) sent by Standard Rice Company to· Berios & Co. was not even received by Berios & Co. until October 30. Consequently, of course, a reply could not have been gotten to· Standard Rice Company on October 29.

"(2) The witness, Farda, manager of Standard Rice Company, testified as follows: 'The time required to transmit a cable from San. Juan to Houston varies; at this time our records show in these particular cables that a cable dispatched from Porto Rico on say October 21,. we would receive it the following day, and a cable dispatched on October 24 would be received on October 25.' (The cables show no such rapid transmission as the witness claimed, but. even under such exaggerated claim, it would be impossible for confirmation to· have been received within twenty-four hours from the time of the filing of the first message.)

"(3) There is no evidence in the record' showing an agreement between Standard Rice Company and Berios & Co. to the effect that any offer made by the Standard Rice· Company was not binding upon them, unless. an acceptance thereof was received by them in Houston within 24 hours from the time· the cable was filed. Witness Farda testified; 'We have a rule * * *' to the above effect. The rules of defendant do not constitute a contract between defendant and the broker. The·

same witness testified, 'We had a written contract with that concern (meaning Berios & Co.) with reference to the transaction of our business. * * * We made no new contract with him, because the old contract was considered in force, and all the arrangements that he worked under in the past were continued.' The written contract was not introduced in evidence, and no one testified that the contract contained the 24 hour limitation.

"(4) Even if the 24 hour limitation had been stipulated, as between Standard Rice Company and Berios & Co., its existence had never been suggested to the plaintiff, Garic & Co., and its contracts would not be affected thereby.

"(5) There is no testimony in the record showing that the 24 hour limitation was established as a general custom in the rice trade at the time in question in San Juan, Porto Rico. The statement of the witness, Farda, in this connection is, 'the general custom existing in the rice trade at the time in question in San Juan with reference to the confirmation of sales and the time of confirmation was that there is no sale binding. An offer is firm, it is all subject to confirmation. I have been selling rice in Porto Rico through brokers for 15 years. I was familiar during October, 1919, with the custom generally prevailing in the rice trade at San Juan, Porto Rico. The custom was that offers were subject to confirmation, and no sale binding until confirmed by the sellers.'"

It might be further said, as bearing upon both questions herein discussed, that there was ample testimony upon which a finding that Berios & Co. were acting throughout the transaction as the agents of appellant—not merely as brokers—might have been based, and if it be essential to the support of the judgment rendered, one will be deemed to have been made by the trial court.

[2] As concerns the state of the proof underlying finding No. 5, there is little, if any, room for questioning its sufficiency. Appellee's manager testified that he was first notified between January 15 and 20, 1920, of the refusal of delivery, and the manager of Berios & Co.'s rice department testified that about a month or two after the last of November, 1919, they received a letter from appellant saying it would neither confirm the sale nor ship the rice, whereupon they notified appellee accordingly.

[3, 4] It is true there is in the statement of facts a cable and confirmatory letter of date November 1, 1919, from appellant to Berios & Co., saying it could not offer 906 type of rice at that time, but it seems clear from the attending circumstances that this had reference to different business entirely, that is, to an offer from A. Vicente & Co. the agents had made by a cable of date October 31, and not to the transaction here involved, which had been previously closed; at any rate, Berios & Co. so interpreted it, and did not advise appellee that its contract would not be carried out until after January 1, 1920, which was the first intimation of a repudiation the latter had. Appellee therefore, up until the receipt of this notice after January 1, had a right to expect that the rice would arrive at San Juan during the first half of that month, which the undisputed evidence showed would have been the ordinary time en route, had the shipment been made from appellant's mill at Houston on November 30, 1919, the last day it could wait under the terms of the contract. This being its status on receipt of appellant's refusal to make delivery, it was entitled to measure its damages by reference to the market value prevailing on that date.

Pursuant to these conclusions, the judgment of the court below has been affirmed.

Affirmed.