## GABLE v. FRIGIDAIRE CORPORATION.
### No. 3713.

Court of Civil Appeals of Texas. El Paso.
Sept. 29, 1938.

Rehearing Denied Oct. 20, 1938.

Crane & Crane, of Dallas, for appellant.

John T. Pearson and Wren, Pearson & Jeffrey, all of Fort Worth, and Webster Atwell, of Dallas, for appellee.

WALTHALL, Justice.

We adopt appellant's statement in his brief as a sufficient statement of the nature and result of the suit. It is substantially as follows:

Appellant, F. H. Gable, filed this suit in the District Court of Dallas County, Texas, on May 6, 1936, against the appellee, Frigidaire Corporation, a foreign corporation, for damages for the breach of a contract for the sale by appellee to appellant of fifty electric refrigerators. Appellant alleged that on March 14, 1936, he was and had been for a long time prior thereto engaged in business in Dallas, Texas, as a dealer at retail in electrical supplies and accessories, including electric refrigerators manufactured by the appellee which were known as "Frigidaires"; that on March 14, 1936, he entered into a contract with the appellee, through its duly authorized agent at Fort Worth, Texas, for the purchase of a carload of fifty electric refrigerator units for his retail trade at the agreed price of $5661.60, payable $1000 cash with order and the balance to be paid by sight draft with bill of lading attached drawn upon appellant by appellee, appellant to pay the cost of transportation from appellee's factory at Dayton, Ohio; that on said date he made the $1000 cash payment to appellee, which was duly accepted and retained by appellee, and appellee agreed to ship the merchandise "at once and without fail"; that appellant was at all times thereafter ready, able and willing to pay the balance of the agreed purchase price, together with such freight charges as might be due, upon delivery of such merchandise to him at Dallas in accordance with the terms of said contract; that although appellee ac-

cepted said order and retained the $1000 cash payment for the period of from March 14th, 1936, to April 1st, 1936, nevertheless on or about April 1st, 1936, without cause, it breached said contract of sale, refused to make delivery of said merchandise to appellant and returned to him the $1000 theretofore paid and advised appellant that it not only would not ship the merchandise covered by the contract of purchase, but would not thereafter sell him any further merchandise.

Appellant further alleged that he had been buying and selling appellee's products for a period of approximately one year and had become thoroughly identified with the buying public as a dealer in Frigidaire refrigerators; that on or about March 1st, 1936, appellant, with the full knowledge and consent and acquiescence of appellee, had inaugurated an intensive sales campaign whereby appellant planned to sell, and would have sold, a large number of electric refrigerators manufactured by the appellee; that he had employed at large expense seven salesmen in addition to the sales force theretofore maintained by him and, in anticipation of the delivery by appellee of the refrigerators covered by said contract, had expended large sums of money in advertising appellee's products; that appellee was the only person from whom appellant could purchase electric refrigerators of the kind manufactured by appellee. He further alleged that had appellee performed its obligation under said contract, he could and would have sold said refrigerators at retail at a net profit of $2,900; and prayed for judgment accordingly.

Appellee, by its first amended original answer, admitted that it had entered into the contract of sale referred to and described in appellant's original petition, and had accepted the order referred to therein and had received the cash payment mentioned, but, in avoidance of liability for damage for the breach thereof, alleged that the dealings between appellant and appellee were made pursuant to a written contract called "Texas Frigidaire Dealer's Agreement" dated March 26, 1935, and two appendices thereto, dated March 26, 1935 and July 10, 1935, respectively, theretofore entered into by and between appellant as "Dealer" and appellee as "Seller."

Appellee pleaded specially the following provisions contained in the contract referred to: "21. Seller will use its best efforts to fill all of Dealer's orders, but it is agreed that any failure on its part to make deliveries of such orders shall not give dealer any claim for damage or cause of action of any kind."

Also the following provision: "6. This agreement shall continue in force and govern all relations and transactions between the parties hereto until cancelled or terminated. Either party may cancel, or terminate this agreement at any time, with or without cause, providing the party desiring so to terminate and cancel the same gives unto the other a written notice (by registered mail or other means of delivery) of such intention. Such cancellation or termination to become effective upon receipt of such notice."

And the further provision: "22. In case of the termination of this agreement by either party for any reason Seller may at its option repurchase from Dealer at the net price paid by Dealer to Seller, plus actual freight on shipments to Dealer, any or all of the Frigidaire Products, repair and replacement parts on hand in Dealer's place of business or in the possession of Dealer, and upon demand and the tender by Seller of said repurchase price, Dealer shall be obligated to deliver such goods to Seller forthwith. The Seller, however, reserves the right to reject any Frigidaire Products or repair or replacement parts not in first class condition."

That on March 31, 1936, appellee notified appellant by registered mail that it had elected to cancel the "Dealer's Agreement" above referred to; that by reason of the above quoted provisions appellant was not entitled to recover any damage by reason of the breach of the contract of sale set out in appellant's petition.

Appellant specially excepted to Paragraph VII of appellee's answer setting up paragraph 21 of the "Dealer's Agreement" on the ground that that provision was contrary to public policy and void. This exception was sustained by the trial court.

The case was tried before the court without a jury and resulted in a judgment on July 19, 1937, that appellant take nothing, to which judgment appellant excepted in open court and gave notice of appeal.

## Opinion

This suit is for damages alleged to have resulted to appellant from a breach of con-

tract. What is referred to as the Frigidaire Dealer's Agreement is expressed in the above statement. The two paragraphs in the agreement which have application and call for construction are paragraphs six and twenty-two, and which we quote here for convenience.

Paragraph six provides: "This agreement shall continue in force and govern all relations and transactions between the parties hereto until cancelled or terminated. Either party may cancel, or terminate this agreement at any time, with or without cause, providing the party desiring so to terminate and cancel the same gives unto the other a written notice (by registered mail or other means of delivery) of such intention. Such cancellation or termination to become effective upon receipt of such notice."

Paragraph twenty-two provides: "In case of the termination of this agreement by either party for any reason Seller may, at its option, repurchase from Dealer at the net price paid by Dealer to Seller, plus actual freight on shipments to Dealer, any or all of the Frigidaire Products, repair and replacement parts on hand in Dealer's place of business or in the possession of Dealer, and upon demand and the tender by Seller of said repurchase price, Dealer shall be obligated to deliver such goods to Seller forthwith. The Seller, however, reserves the right to reject any Frigidaire Products or repair or replacement parts not in first class condition."

The trial court made and filed findings of fact. The findings are not controverted by either party, and we will briefly state only portions of some of the findings as the facts. They are sufficiently stated in the statement of the nature and result of the suit. The parties were acting under the agreement, the two paragraphs of which are stated above. Acting under the agreement appellant made an order for fifty of the refrigerators at the agreed price of $5661.60, and with the order made a cash payment of $1000, which order was accepted by appellee with agreement to ship the refrigerators. Appellee later refused to make the shipment, cancelled the order and returned the cash payment, and its defense pleaded for doing so are the rights accorded it to cancel the order expressed in Paragraphs six and twenty-two stated above.

The question presented here is whether the paragraphs of the agreement quoted, under the uncontroverted facts stated, give appellee the right to cancel the order for the refrigerators and refuse to ship them.

■ Appellant refers to a number of cases as supporting his view that appellee did not have the right under the contract to cancel the order and refuse to make shipment, and among the cases cited is Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333. In that case it is said [page 338]: "It is a well-established rule of law that a contract may provide for its termination at the option of one or either of the parties, and such a stipulation, when fairly entered into, will be enforced if not contrary to equity and good conscience. Such a provision in a contract has no effect on the binding obligations of the contract so long as the parties act thereunder, before revoking or terminating it. 13 C.J. p. 606. Under the plain terms and express provisions of this contract, and the facts and circumstances shown of record, the stipulation for termination was fairly made; and the results and consequences must have been fully foreseen and understood by all the parties." In this case, as in that, the pleadings raise no issue of fraud, accident or mistake. In that case the written agreement is somewhat similar to the agreement in this case, but the written agreement seems to have been modified by giving the dealer a period of six years non-cancellable contract. See same case on second trial. Tex.Civ.App., 48 S.W.2d 735. The same case was again before the Commission of Appeals in 123 Tex. 608, 73 S.W.2d 517, and Judge Critz again wrote the opinion for the Court, in which it is held, as we construe the opinion, that the six-year term of written contract having been modified by the oral as to its termination, the written contract preserves (quoting therefrom), "but company does not agree absolutely to fill them [the shipping specifications of the dealer], but expressly reserves the right to refuse them from time to time, or such parts of them as company deems necessary or proper," and "no legal liability to fill such estimates being incurred under any circumstances" [page 519]. The opinion holds: "It is certainly not possible for us to hold that a contract containing the above provisions obligated Ford Motor Company to sell Maddox Motor Company such products [as] the trade needs of Maddox Motor Company required for six years."

■ The agreement provides for its termination by cancellation or termination by either party, with or without cause, at any time, by giving notice, and that the Seller may, at its option, repurchase any or all of the products on hand in his place of business or in possession of the dealer. Appellant contends that the agreement as to the right of repurchase is unenforceable for lack of mutuality. But a contract cannot be unilateral in part and bilateral in part; it is one or the other. There an order was given by appellant and accepted by appellee and part payment made. This was under the contract. Big Four Ice & Storage Co. v. Williams, Tex.Civ. App., 9 S.W.2d 177, and the cases there referred to, settles the question against appellant's contention. In that case the Waco Court of Civil Appeals, in reviewing the Texas authorities, said [page 178]: "There is a class of cases which hold that, though a contract be void for lack of mutuality at the time it is made, and while it remains wholly executory, yet, when there has been even a part performance by the party seeking to enforce the same, and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made, which confers even a remote benefit on the other party thereto, such benefit will constitute an equitable consideration, and render the entire contract valid and enforceable. This phase of the law was ably discussed by the late Chief Justice Key, in Edwards v. Roberts (Tex.Civ.App.) 209 S.W. 247." (Writ of error refused.)

■ Judge Key's opinion refers to Hammond on Contracts, page 683, as follows: "The test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn."

■ Here the contract contained explicit provision for its abrogation on notice. In 37 Tex.Jur., p. 207, Sec. 80, it is said: "But a contract may contain explicit provisions for its abrogation. Thus an order may provide for its cancellation before shipment of the goods, or within a specified number of days. And when the contract authorizes one party to rescind, the other party has no recourse if the right of re-

scission is exercised." The above statement refers to the following cases in support of what is there said: Houston Packing Co. v. Cuero Cotton Oil & Mfg. Co., Tex.Com.App., 255 S.W. 168; Werthan Bag Co. v. Houston Bag & Bagging Co., Tex.Civ.App., 230 S.W. 1055, error dismissed; San Jacinto Oil Co. v. Fort Worth L. & P. Co., 41 Tex.Civ.App. 293, 93 S.W. 173. A seller rescinds by refusing to make delivery (Standard Rice Co. v. William M. Garie & Co., Tex.Civ.App., 274 S.W. 652), or by retaking the goods after delivery (Raby v. Sweetzer, 12 Tex.Civ.App. 380, 34 S.W. 779).

■ In what we have said we have assumed that the contract lacked mutuality at the time when made, as contended by appellant. But taking the contract as a whole we doubt whether it is lacking in mutuality. Appellant submits that because he incurred expense in the employment of additional salesmen and advertising, upon the expectation that the refrigerators ordered would be delivered, appellee should be estopped to claim that it had cancelled the contract. Appellant had notice by the contract of appellee's unqualified claim of right to cancel the contract by giving notice of its intention to cancel.

In Velie Motor Car Co. v. Kopmeier Motor Co., 7 Cir., 194 F. 324, the seller sued the dealer for breach of contract to buy automobiles which the seller tendered to the dealer at the stipulated prices. Plaintiff alleged that defendant repudiated the contract and refused to buy, and asked for damages. Defendant alleged payment of $1000 under the terms of the contract, admitted repudiation of the agreement, and by counter claim asked for recovery of the payment with interest. Because of the cancellation right expressed in the contract the court held plaintiff was not entitled to recover and that defendant was entitled to recover the payment made.

■ In Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167, where a reservation for cancellation of the sales contract had been expressed, the court said [page 171]: "Where parties deal upon such a basis, however, they cannot invoke the aid of the courts when their expectations are disappointed. Our function is to interpret and enforce contracts, not to make or extend them."

We have concluded that reversible error is not made to appear. All assignments are overruled and the case is affirmed.