**HUFFCO PETROLEUM CORP., Norse Petroleum (U.S.), Inc. and Huthnance Energy Co., Appellants,**

v.

**TRUNKLINE GAS CO., Appellee.**

**No. B14–88–308–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 1989.

Rehearing Denied April 27, 1989.

Stephen G. Scholl, George W. Lederer, Houston, for appellants.

Jesse P. Luton, Jr., Houston, for appellee.

Before ROBERTSON, SEARS and ELLIS, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from the granting of summary judgment in favor of Trunkline Gas Co. (hereinafter "Trunkline"). Appellants Huffco Petroleum Corp., Norse Petroleum Inc. and Huthnance Energy Co. (hereinafter collectively referred to as "Huffco") contend the trial court erroneously granted summary judgment. We reverse and remand for trial.

The dealings between the parties began in the mid 1970's when Trunkline entered into a Gas Supply Incentive Agreement with Conoco and others covering South Marsh Island Block 261, offshore drilling in southern Louisiana. During that time gas supplies were scarce and Trunkline obligated itself to advance funds to Conoco, which owned certain oil and gas leasehold interests, for the development of this area in exchange for Conoco's commitment to sell the gas produced to Trunkline, which owned and operated a natural gas trans-

mission pipeline system. These sales were to be accomplished by means of gas purchase contracts, the first of which was executed near the time of and referenced in the incentive agreement.

Between 1982 and 1983, Huffco was negotiating with both Conoco for an interest in Block 261 and with Trunkline for the sale of gas produced from that interest. On March 14, 1983, Huffco entered into a farmout agreement with Conoco by which they would earn an interest in the north half of Block 261 by completing three wells on platform B. To finalize the negotiation between Huffco and Trunkline, on August 29, 1983, Trunkline forwarded a gas purchase contract to Huffco. The letter of transmittal stated:

> Enclosed for counterpart execution are six (6) copies of a proposed gas purchase contract between Huffco Petroleum Corporation, et al. and Trunkline Gas Company covering the purchase of gas produced in the South Marsh Island Block 261, Offshore Southern Louisiana.
>
> This resubmittal incorporates some of the changes you suggested in our recent meeting.
>
> If this contract meets with your approval, please sign five (5) copies and return to Trunkline. Two (2) fully executed copies will be returned to Huffco together with as many conformed copies as you may request for filing and inter-office distribution.
>
> Your cooperation in reaching this agreement is appreciated.

The gas purchase contract submitted for Huffco's approval stated in pertinent part:

> Art. II (2) Seller represents that it owns or controls an undivided interest in that certain valid and subsisting oil and gas lease covering lands located in the South Marsh Island block 261 field area, offshore southern Louisiana ... and that it desires to produce therefrom and sell to buyer gas in the quantities, in the manner and subject to the terms and conditions provided in this contract.

> Art. XV (1) Seller hereby warrants title to the gas sold and delivered hereunder and the right of Seller to sell same, and Seller warrants that all such gas is owned by Seller free from all liens and adverse claims ...

This wording of the contract presented a problem for Huffco because, as of that date, Huffco had completed only one of the three wells necessary for it to earn the assignment pursuant to its farmout agreement with Conoco. Therefore, under the guidance of Trunkline, appellants drafted a transmittal letter disclaiming a present interest in the lease. Appellants then executed copies of the proposed contract on October 12, 1983, and returned them to Trunkline with a letter of transmittal which stated:

> Attached are 5 copies of the above-referenced gas contract which have been executed by Huffco Petroleum Corporation, as Seller.
>
> As previously advised, Huffco does not presently own an interest in OCS Lease G–2306, but does have the right, under the terms of a farmout agreement with Conoco, Inc. and others to acquire an interest in the lease by conducting certain completion operations. By executing the subject gas contract, Huffco is evidencing its intent to dedicate all of its interest in OCS Lease G–2306 to Trunkline Gas Company and will notify Trunkline at such time Huffco's interest has vested pursuant to the terms of the farmout agreement.
>
> Should you need any additional information, please contact the undersigned.

Thereafter, Huffco proceeded to complete the wells pursuant to their farmout agreement with Conoco and they spent some $4,750,000 constructing a platform for the wells and a transport pipeline. Trunkline required specific metering equipment, which Huffco purchased, and Trunkline approved plans for the "gas metering skid." On June 29, 1984, Huffco notified Trunkline of its filing on all three wells for pricing authority with the United States Department of the Interior.[1] However,

---

1. The summary judgment evidence included the

affidavit of E.C. Peet, vice-president of produc-

Trunkline had still not executed the copies of the gas purchase contract signed by appellants on October 12, 1983. On July 27, 1984, Trunkline representatives met with appellants to inform them that Trunkline would not execute the proposed agreement.

Appellants sued for breach of the gas purchase agreement, for breach of the gas supply incentive agreement which obligated Trunkline to enter the gas purchase agreement with Huffco, or alternatively for recovery based on promissory estoppel since Huffco acted in reliance on Trunkline's promise to execute the gas purchase contract. In its motion for summary judgment, Trunkline maintained that the contract was intended to be conditioned on Huffco earning its interest in the lease and on Trunkline reaching a transportation agreement, which was never signed. The trial court granted appellees motion finding that (1) no valid and existing written agreement between Trunkline and Huffco obligated Trunkline to purchase the gas produced by Huffco, (2) the gas purchase contract is not enforceable under the statute of frauds, (3) promissory estoppel provides no basis for recovery, and (4) Huffco has no rights or claim under the gas supply incentive agreement of May 30, 1975.

In a single point of error appellants contend that the trial court erred in granting summary judgment in favor of Trunkline. Appellant first claims that the court ignored the law applicable to summary judgments in Texas.

Under Tex.R.Civ.P 166a(c) (Vernon Supp. 1988) summary judgment may be granted only where there is no genuine issue as to any material fact. A summary judgment must be based on uncontroverted evidence which is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies and could have been readily controverted. In reviewing the actions of the trial court we will disregard all conflicts in the evidence and accept as true the evidence in favor of appellants. *Great*

*American Reserve Insurance Co. v. San Antonio Plumbing Supply Co.*, 391 S.W. 2d 41, 47 (Tex.1965).

As a basis for granting summary judgment the trial court found that no valid agreement obligated Trunkline to purchase the gas produced by Huffco. However, generally, whether there is a contract is a question of fact. *Henry C. Beck Co. v. Arcrete, Inc.*, 515 S.W.2d 712 (Tex.Civ.App. —Dallas 1974, error dismissed). Enforceability is a question of law only where the circumstances surrounding an agreement are undisputed. *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Southwestern States Oil & Gas Co. v. Sovereign Resources, Inc.*, 365 S.W.2d 417 (Tex.Civ. App.—Dallas 1963, writ ref'd n.r.e.).

In this case, it is undisputed that Trunkline submitted a proposed gas purchase contract to Huffco, which Huffco signed and returned. But there remains a dispute as to the intentions of the parties. Trunkline argued in its motion that it did not intend to be bound by that writing. Trunkline's evidence in support of its motion, however, is controverted in regard to its intent. Affidavits submitted by officials of Trunkline recite that the agreement was conditioned on Huffco earning its interest in the lease and on Trunkline reaching a transportation agreement, but that evidence must be disregarded because it is contradicted by appellants' affidavits in response to the motion for summary judgment. We can find no evidence in support of Trunkline's position that Huffco had no contractual rights as a matter of law.

Furthermore, the statute of frauds did not make the gas purchase contract unenforceable. The statute of frauds applies to this transaction because the sale of oil and gas already severed from the land is a contract for the sale of goods. Tex.Bus. Com.Code Ann. 2.107(a) (Vernon Supp. 1989). Under the statute, a written contract must contain the signature of the party against whom enforcement is sought;

tion for Huffco. He states that "wells must be drilled and completed before Huffco can apply for a well classification determination". Thus,

Trunkline was necessarily informed that Huffco had done everything necessary to earn its interest in the lease by June 29, 1984.

or between merchants, the statute is satisfied where a written contract sufficient against the sender is received by a party who has reason to know of its contents. TEX.BUS.COM.CODE ANN 2.201 (Vernon 1968).

Trunkline and Huffco were merchants under the code, a term which applies to all but the most casual and inexperienced seller. *Nelson v. Union Equity Co-Op Exchange,* 548 S.W.2d 352, 357 (Tex.1977). Therefore, the execution of the contracts forwarded to Trunkline by Huffco served as a writing in confirmation of an agreement for sale, sufficient against its sender. Trunkline had reason to know of the contents of the contract because their agents wrote it. Further, Trunkline had reason to know of the information in the transmittal letters, because the letters were drafted with Trunkline's guidance. Since Trunkline did not object within ten days after receipt of the contracts, they had no defense to the agreement under the statute of frauds. TEX.BUS.COM.CODE ANN. 2.201(b) (Vernon 1968). Appellant's point of error is sustained.

Judgment is reversed and remanded for trial on the merits.