**HENRY C. BECK COMPANY,
Appellant,**

v.

**ARCRETE, INC. and Milton C. Cross,
Appellees.**

**No. 18384.**

Court of Civil Appeals of Texas,
Dallas.

Oct. 10, 1974.

Rehearing Denied Nov. 7, 1974.

---

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Edmund L. Cogburn, Dow, Cogburn & Friedman, Houston, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Henry C. Beck Company appeals from an order sustaining the pleas of privilege filed by Arcrete, Inc. and Milton C. Cross.

This suit was originally filed in the district court of Dallas County by Henry C. Beck Company (Beck), a corporation having its principal office and place of business in Dallas County, Texas, against Arcrete, Inc. (Arcrete), a corporation having its principal office and place of business in Houston, Harris County, Texas, and Milton C. Cross (Cross), a resident of Houston, Harris County, Texas. Beck alleged that on May 29, 1973, Arcrete and Cross submitted to Beck a proposal to furnish all labor, materials, tools, and equipment as required to complete production and erection of pre-cast architectural concrete for an eight-story administration and three-story computer building to be located in Dallas, Texas, for a total contract price of $575,000.00. It is further alleged that within a short time after receiving such proposal Beck advised Arcrete and Cross of its acceptance thereof and made extensive preparations for the entry by Arcrete and Cross upon the property to perform their duties pursuant to such proposal, and that Arcrete and Cross did enter upon and commence performance of their duties pursuant to such accepted bid. Beck alleged that on or about August 20, 1973, Arcrete and Cross advised Beck of their repudiation of the contract and of their refusal of any further performance of their duties and obligations thereunder. Beck alleged that such repudiation caused it to make an agreement with another contractor resulting in its loss and damage in the sum of $142,897.00, which represented the additional cost to Beck for the performance of the work covered by the agreement with Arcrete and Cross. Beck sought a judgment for damages in that amount. Both Arcrete and Cross timely filed their pleas of privilege to remove the case to Harris County, Texas.

Beck controverted the plea of privilege filed by Arcrete by alleging that the suit was against Arcrete, a private corporation, and that the cause of action, or a part thereof, arose in Dallas County, Texas, so that venue of the action as against the corporate defendant was properly maintainable in Dallas County under Vernon's Tex. Rev.Civ.Stat.Ann. art. 1995 subd. 23 (1964).

As to the individual defendant, it was alleged that Cross was a joint venturer with the corporate defendant and is a necessary party to the suit so that venue as to such individual defendant is maintainable under Tex.Rev.Civ.Stat.Ann. art. 1995 subd. 29a (1964).

The trial court sustained both pleas of privilege and ordered the cause transferred to Harris County, Texas.

At the request of Beck, the trial court made findings of fact and conclusions of law. The court found that in the early part of 1973 Beck commenced negotiations for a subcontract involving the furnishing of pre-cast concrete by Arcrete, Inc., for a project known as the E.D.S. project in Dallas, Texas; that in August 1973 Arcrete informed Beck that Arcrete was terminating all further activity on the project in question; that the negotiations in question between Beck and Arcrete were never completed, and, at the time the termination notice was given there were essential elements of the contract in question which had not been resolved by agreement between Beck and Arcrete so that no contract was ever entered into between the parties for the project in question. The court further found that Cross was not a party to the negotiations in his individual capacity, nor did anyone act on his authority to represent him in negotiating with Beck. The court concluded that Beck failed to prove a cause of action against Arcrete which arose in whole or in part in Dallas County, Texas, and thereby failed to bring Arcrete within Article 1995(23) so as to maintain venue against Arcrete in Dallas County. It was also concluded that Cross was not a necessary party to Beck's suit against Arcrete under Article 1995(29a).

In its first four points of error appellant Beck attacks the trial court's finding that no contract was ever entered into between Beck and Arcrete because (1) there is no evidence to support such finding; (2) there is insufficient evidence to support such finding; or (3) such finding is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. In its fifth, sixth, seventh, and eighth points of error Beck charges error on the part of the court in sustaining the plea of privilege of defendant Cross and thereby finding that Cross was not a necessary party with Arcrete in this cause since (1) there is no evidence to support such finding; (2) there was insufficient evidence to support same, or (3) the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

The venue statute, Article 1995, provides that no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile except in certain designated exceptions. Subdivision 23 of Article 1995 provides that suits against a private corporation may be brought in the county in which its principal office is situated; or in the county in which the cause of action or part thereof arose. Subdivision 29a of Article 1995 provides that if there are two or more defendants in any suit brought in any county of this state and if suit is properly maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto. The questions presented to us are, (1) was there a contract between Beck on the one hand and Arcrete and Cross on the other; (2) did the cause of action based upon such contract arise in whole or in part in Dallas County, Texas; and (3) if so, was Cross a party to such contract and therefore a necessary party to the suit.

As to the first question the trial court found that there was no contract in existence between Beck and Arcrete. We must determine from the record if there is evidence of probative force to support this finding.

The only witness who testified at the venue hearing was James William Archer, manager for Beck on the E.D.S. project in

Dallas. He testified that in the early part of 1973 he negotiated with representatives of Arcrete concerning a subcontract to provide certain materials on the E.D.S. project. In April 1973 Arcrete tendered a bid for pre-cast materials on the project which bid was accepted by Beck. Archer testified that concurrent with and subsequent to the arrangements for the pre-cast materials the parties negotiated for what he called a "package deal," which meant a contract not only for the materials but also for labor and other matters necessary for the erection of the pre-cast architectural concrete. By letter dated May 29, 1973, Arcrete submitted its bid on the package deal to Beck in which it proposed to furnish labor and materials in the production and erection of pre-cast architectural concrete for the building called the "E.D.S. project." Beck accepted Arcrete's bid the following day. This acceptance was recognized by Arcrete in a letter of May 31, 1973, to Beck. The bid itself specified the material terms including the materials to be supplied, the type of erection work to be performed, the consideration, and the method of payment. In its May 31 letter to Beck, Arcrete requested an increased consideration for its pre-cast materials, which request was denied by Beck on June 11, 1973. Arcrete, however, proceeded with its preparation for the work. In a letter dated July 2, 1973, Beck notified Arcrete of its intent to supply Arcrete with a written subcontract on the package deal. On August 15, 1973 Beck sent to Arcrete a written instrument called a subcontract, backdated to June 6, 1973, which was never executed. About August 27, 1973, there was a meeting between the parties at which time Arcrete declined to perform.

Arcrete argues that the writing prepared by Beck and submitted to Arcrete on August 15, 1973, contained five specific variances from the May 30, 1973, accepted bid on the package deal between Beck and Arcrete. These were: (1) a provision on indemnifying the owner and contractor; (2) a requirement that the owner provide builder's risk insurance; (3) payment of utilities; (4 and 5) provisions which permitted the contractor to withhold payments from the subcontractor based upon materialmen's liens and also to withhold payments pending the removal of "cash materialmen's liens."

Archer was questioned about each one of these variances and candidly conceded that he had not discussed any of them with Arcrete's agent prior to submitting the written document for execution. He admitted that none of the variances in the writing were contained in the letters and negotiations which led to the accepted bid. He said that normally he submitted a form of subcontract and then would sit down with the parties later and negotiate the changes from the standard format.

Archer testified that in the negotiations leading to the acceptance of Arcrete's bid of May 30th he and one Townsend, who represented Arcrete, had discussed the terms of the agreement, and that these terms were stated in the accepted bid. He also testified that the "format" of the instrument which he subsequently prepared for Arcrete's signature was the same as a subcontract which had been previously signed between Beck and Arcrete on a job known as the Medical City job in Dallas. A comparison of the two instruments discloses that all five of the specific variances mentioned above were deleted from the Medical City contract. Archer testified that after the contract had been offered and accepted on May 29 and 30, 1973, Arcrete proceeded to prepare detailed shop drawings to be used in carrying out the contract. Arcrete also built six moulds of a three-leaf-clover column cover as a part of the pre-cast required for the project. It also bought some tonnage of Wyoming aggregate and had it delivered to its plant. When asked whether shop drawings are sometimes prepared before an agreement is reached, Archer replied, "I doubt that that happens, but I can't speak with any authority for that."

Whether the execution of the written instrument tendered by Beck was, and is, essential to a mutuality of assent becomes a question of intent of the parties. Our Supreme Court in Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 556 (Tex.1972), discussed this troublesome problem and held that parties may agree upon some terms of a contract and understand them to be an agreement but yet leave other portions of the agreement to be made later. In discussing the question of whether the parties intended the matters left for future discussion were essential to the validity of the agreement, the Supreme Court quoted 1 Corbin on Contracts § 29, Partial Agreements— "Contract to Make a Contract," at 87–91 (1963) in which it is stated:

> People do business in a very informal fashion . . . . A transaction is complete when the parties mean it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact.
>
> .    .    .    .    .    .
>
> Even though certain matters are expressly left to be agreed upon in the future, they may not be regarded by the parties as essential to their present agreement. Furthermore, the terms left for future settlement may be within definite and prescribed limits.

The same text continues:

> Two persons may fully agree upon the terms of a contract, knowing that there are other matters on which they have not agreed and on·which they expect further negotiation. Such an expectation does not prevent the agreement already made from being an enforceable contract. This may be true even though they expressly provide in their agreement that the new matters, when agreed upon, shall be incorporated into a written lease or· other formal document along with the contract already made. [*Id.* at 94.]

■ The trial court found not only that there was no contract between the parties but also that the parties intended that the five enumerated variances between the agreement of May 30, 1973, and the ultimately tendered written subcontract were essential to their contract. A careful examination of the entire record in this case convinces us that there is no evidence of probative force to support these findings. In making the finding concerning the essentiality of the variances the trial court must have drawn legally impermissible inferences from certain circumstances. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex.1970). We hold that there was, as a matter of law, a contract between Beck and Arcrete entered into in Dallas County. From the evidence that we have discussed above, we have concluded that the only legally sufficient evidence on the question whether there was a contract, the May 29 bid and the terms therein and the May 30 acceptance, conclusively shows that there was a contract. We recognize that whether there is a contract is generally a question of fact. Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 556 (Tex. 1972). However, this rule does not apply when undisputed documentary evidence shows that the parties intended to be bound and there is no legally sufficient evidence to the contrary. We therefore sustain Beck's "no evidence" point and reverse and render, as to Arcrete.

■ As to the points concerning the individual defendant Cross, the question is whether he is a necessary party to this action so as to maintain venue against him under Subdivision 29a of the venue statute. The question turns on whether Beck proved that Cross was a joint venturer with Arcrete on the project in question.

We have reviewed the record with respect to Cross and have applied the same analysis to this question as we have to the question regarding the contract with Arcrete. We have concluded that there is no legally sufficient evidence showing that Cross was a joint venturer with Arcrete on the project. While the record is replete with passing references to negotiations by Beck with "Arcrete and Cross" such references were usually mentioned by Beck's attorney without a response by the witness

specifically identifying Cross as the joint venturer. That is, the testimony does not show that Cross was acting as a joint venturer as distinguished from his role as president of Arcrete. The trial court found as a fact that Cross was not a party to the negotiations on his individual behalf, and that no one authorized to represent Cross acted on his behalf in negotiating with Beck on the project in question. We find no evidence in the record that Arcrete's agent had authority to bind Cross individually. We think the trial court was supported by the record in his finding concerning Cross and we therefore overrule Beck's fifth through eighth points of error.

The judgment of the trial court sustaining the plea of privilege of the appellee Arcrete is reversed and here rendered that same be overruled so that the cause of action as to Arcrete be retained in Dallas County, Texas. The judgment of the trial court sustaining the plea of privilege as to appellee Cross is affirmed.

Reversed and rendered in part and affirmed in part.