**Tom GAEDE, Appellant,**

v.

**SK INVESTMENTS, INC. d/b/a Helikon Furniture Company, Appellee.**

No. 14–99–00003–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 25, 2001.

Frederick L. Unger, Bellaire, Houston, TX, for appellants.

John J. Pfister, Frisco, TX, for appellees.

Panel consists of Justices ANDERSON, FROST, and EVANS.*

## MAJORITY OPINION

EVANS, Senior Justice (Assigned).

This is an appeal from a take-nothing summary judgment in favor of appellee. Appellee brought suit against appellant. Appellant cross-claimed alleging breach of a one-year sales agency agreement. The trial court granted summary judgment in favor of appellee on the cross-claim. Appellant then perfected this appeal. We reverse the summary judgment and remand the cause for trial on the merits.

### The Issue

The central issue on appeal is whether appellee, as movant for summary judgment, demonstrated, as a matter of law, that appellant did not have an enforceable one-year sales agency contract. In deciding this issue, we must examine the summary judgment evidence to determine whether there is a genuine issue of material fact regarding the parties' intent to enter into a one-year agency agreement.

### Background

In 1995, appellee's predecessor, Helikon Furniture Company, appointed appellant as its "independent sales agent" for the sale of its furniture products in Texas.[1] This agency relationship was evidenced by a written contract dated September 15, 1995, which provided that appellant would serve as the company's "sole" and "exclusive" sales agent in the designated territory and would refrain from representing any competing companies. It specified: (1) the commissions appellant would receive on his sales; (2) that appellant would function as an "independent entity" and not as an "employee"; and (3) that appellant would generally be responsible for his own expenses and for filing his own tax returns. The contract further provided it could be terminated by either party on 30 days written notice, but that if the company should be sold to a new entity, or if there was a substantial and fundamental change in ownership structure, the parties' contractual agreement would be transferred to the new entity and would not be subject to termination for a period of one year thereafter. In the event of termination, appellant was entitled to his full commissions on registered business quotations for a period of one year after notice of termination.

Pursuant to the terms of this agreement, appellant represented Helikon Furniture Company as its "exclusive sales agent" for about a year and received commissions on his sales. In October 1996, appellee acquired Helikon's business, assets, and name, and elected to continue to do business under the name of its predecessor "Helikon Furniture Company."

---

* Senior Justice Frank G. Evans sitting by assignment.

1. The contract provided that the appointment for the "entire State of Texas was temporary until such time as the Company finds a permanent Agent for the Northern Texas area of Dallas, Ft. Worth."

According to the summary judgment record, appellee did not assume Helikon's contractual obligations in the course of the acquisition. However, appellee's management allowed appellant to continue to perform his duties as the company's sales agent in the same territory and for the same commissions as under the pre-existing agency agreement. The record further establishes that after the acquisition, appellee and appellant had a number of oral discussions regarding appellant's continuing sales agency relationship.

During the course of these discussions, which extended over a period of some seven months, appellee sent three letters to appellant. Appellant contends these letters constitute written proof of appellee's commitment to extend his sales agency contract for a one-year period. We briefly review the relevant portions of these letters below.

### The October 29, 1996 Letter

On October 29, 1996, appellee sent a letter to all its sales representatives, including appellant, advising them of certain changes it had made "to rationalize" the new company's sales organizations. In this letter, appellee announced it had terminated four of its nine sales representatives and had taken that action "quickly" so its remaining sales representatives could "aggressively" pursue more sales for appellee. Appellee advised: "Well, this has now been done and we expect to continue with the current rep network for at least the next year."

### The December 13, 1997 Letter

On December 13, 1997, appellee sent a second letter to appellant, which stated:

Dear Tom,

As we discussed, I am sending you this letter to set forth the terms of your appointment as an independent representative for the Helikon division of the ICF Group. You will be representing Helikon in the territory as defined by the greater Houston, San Antonio and Austin areas (South Texas).

For any sale where you act solely as a rep, you will be paid a 10% commission of the net sales to Helikon. The commission will be paid within 30 days after shipment of the order.

For any sale where you act as the "installing dealer", you will be paid a commission of 25% on sales where the net prices to Helikon is 50% of the quoted list price. All list prices are to be quoted by Helikon personnel. Under this arrangement, two commission payments will be made; 33% of the commission will be due upon shipment of the order and the balance within thirty days.

If you have any questions, please feel free to call me. I look forward to working with you.

### The May 27, 1997 Letter

In its third and final letter dated May 27, 1997, sometimes called the "termination letter," appellee advised appellant:

Dear Tom:

After considerable discussion among our management team members, we have made a strategic decision regarding the continuing representation of Helikon, i.e. we will consolidate all ICF Group sales within one sales force.

After explaining its rationale for this move and stating that the change would be effective June 1, 1997, appellee continued:

In recognition of your loyalty to Helikon over some difficult years *and to fulfill a commitment made to you in September, 1996 to make no changes for one year,* we will grant to you the following: i) a 10% commission on all Helikon sales booked in your territory (South Texas) prior to September 1, 1997 and ii) a 5% commission on all Helikon sales booked in your territory from October 1, 1997 to December 31, 1997.

(emphasis added).

The letter went on to explain how appellant's future commissions would be paid, adding:

In any event no commission shall be due you for orders booked subsequent to December 31, 1997 or for orders shipped subsequent to June 30, 1998, notwithstanding the fact such shipments may have been made in respect of bookings which occurred prior to December 31, 1997. This arrangement, which we believe to be exceedingly fair, is in lieu of our normal practice of paying commissions only on those projects registered as at the dates when representation of (appellee) concluded.

The letter then stated:

In addition to the foregoing, effective immediately, we hereby terminate the "installing dealer" program we have had with you.

This "termination letter" triggered the events leading to the instant litigation. Soon after appellant received the termination letter, he registered appellee's group name as his own Internet domain name. Upon learning of this action, appellee's group initiated a suit for conversion, to which appellant responded by cross-action asserting that appellee had breached his one-year sales agency contract. Appellee then moved for summary judgment, urging, as a matter of law, that appellant had no enforceable one-year contract and suggesting that its May 27 termination letter was merely a "goodwill gesture" designed to give appellant the commissions on any business booked before the end of the year.

The trial court granted appellee's motion for summary judgment, awarding the Internet domain name to appellee and ordering that appellant take nothing on his breach of contract claim. Appellant seeks this court's review only with respect to the take-nothing portion of the judgment.

## Standard of Review

In reviewing a summary judgment, we must determine whether the movant met its burden of establishing, as a matter of law, that no genuine issue of material fact exists as to one or more essential elements of the non-movant's cause of action and that the summary judgment record conclusively demonstrates the invalidity of the non-movant's claim. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we must take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve all doubts and uncertainties regarding the evidence in his favor. *Id.*

## The Applicable Law

Absent a specific agreement or special circumstances reflecting a contrary intent, either party to an agency relationship can ordinarily terminate the relationship at any time. *Cates v. Cincinnati Life Ins. Co.*, 947 S.W.2d 608, 613 (Tex.App.—Texarkana 1997, no writ). Unless the parties have agreed upon the duration of the agency, the agency relationship is usually considered to be "at-will," subject to cancellation by either party, with or without cause, at any time before full performance. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888). The issue here, therefore, is whether the summary judgment proof conclusively shows appellee did not intend to enter into a one-year sales agency agreement.

Whether an agreement constitutes a valid contract is generally a legal determination for the court. *Chapman v. Mitsui Eng'g. & Shipbldg. Co.*, 781 S.W.2d 312, 316 (Tex.App.—Houston [1st Dist.] 1989, writ denied). However, whether parties *intended* to make a contractual agreement is usually a fact issue for the jury. *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 554–56 (Tex.1972); *Houston Chronicle Pub. Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924, 928 (Tex.App.—

Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Henry C. Beck Co. v. Arcrete, Inc.,* 515 S.W.2d 712, 716 (Tex.App.—Dallas 1974, writ dism'd w.o.j.).

### The Parties' Positions

Appellee contends its three letters to appellant do not constitute a binding commitment on its part to enter into a one-year agency relationship. Appellee argues its letter dated October 29, 1996, expressed only a "hope" that it would not have to make any changes in its sales representative network "for a least the next year." It also asserts that its May 27, 1997, termination letter was simply a "goodwill gesture" to give appellant the benefits of a "severance package." Finally, appellee argues, appellant acknowledged in his deposition that he could "walk away" from the agency relationship at any time and that appellee's representatives had not made any definite commitment to him to continue the agency relationship for a period of one year or longer.

Appellant, however, claims appellee's management made an oral commitment to him to extend the sales agency relationship for "at least" one year and that appellee's three letters, considered together and in light of the surrounding circumstances, tend to support such a one-year commitment. Thus, appellant argues the summary judgment record contains writings that are legally sufficient to establish all essential terms of a one-year sales agency agreement and meet the requirements of the statute of frauds.[2] He further argues that to the extent the language of those writings may be ambiguous regarding the actual dates of the one-year agency period, the meaning of such language is a matter of interpretation for the jury.

### The Surrounding Circumstances

There are a number of circumstances leading up to and surrounding the parties' transaction that tend to shed light on the parties' intent. For example, just prior to appellee's acquisition of Helikon Furniture Company, appellant was completing the first year of his one-year sales agency agreement with Helikon. The record indicates appellant continued to serve the new company as its "independent sales agency" in the same territory and for the same commissions provided in the pre-existing sales agency agreement. Thus, while appellee did not expressly assume Helikon's contractual obligations to appellant, a jury might reasonably infer from these circumstances that appellee knew and approved of appellant's continued service as its independent sales agent within the same territory and for the same commissions as proved by his earlier agreement.

A jury might also infer from the circumstances relating to appellee's letter dated December 29, 1997, that appellee had proposed, and appellant had accepted, a new sales agency contract that somewhat modified the terms of the parties' existing agreement.

Thereafter, appellant continued to perform services as appellee's independent sales agent in the territory designated in said modified agreement until such time as he received appellee's termination letter dated May 27, 1997.

### Analysis

■■■ Based on the summary judgment evidence in the record, we reject appellee's first argument. Appellee's letter dated October 29, 1996, is only one of a series of writings relating to the parties' agency transaction. In considering the legal ef-

**2.** Although the record does not conclusively show the sales agency agreement could *not* be performed in the space of one year, both parties seem to assume the agreement would be governed by the statute of frauds. Accordingly, we assume, without deciding, that the agreement must satisfy the requirements of

that statute to be enforceable. *See Winograd v. Willis,* 789 S.W.2d 307, 310 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (holding that contract capable of being performed within 365 days of execution not within statute of frauds).

fect of these writings, we must read them in conjunction with one another and in the light of all the surrounding circumstances. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 337 (Tex.1980); *Central Power & Light Co. v. Del Mar Conservation Dist.*, 594 S.W.2d 782, 789–90 (Tex.App.—San Antonio 1980, writ ref'd n.r.e.) (holding that validity of contract may be established by one or more writings signed by party to be charged).

■ After considering the three letters together and in the light of the circumstances surrounding the transaction, we conclude they contain all the essential elements of a one-year sales agency agreement. The September 15, 1995, agreement defined the appellant's original territory, his duties, and the basis upon which he would receive his commissions. After appellee's acquisition of Helikon's business and assets in October 1996, appellee knew and approved appellant's continuing service as the company's independent sales representative in the same territory and for the same commissions as set forth in his previous agreement with Helikon. Then, on October 29, 1996, appellee sent a letter to appellant and its other sales agents telling them it intended to continue its sales representative network "for a least the next year." On December 13, 1997, appellee sent a second letter to appellant, redefining his sales territory and specifying the manner in which he would be paid his future commissions. In its third letter dated May 27, 1997, appellee acknowledged its earlier commitment to appellant "to make no changes for one year." However, appellee then proceeded, unilaterally, to terminate appellant's status as an "installing dealer," thereby reducing the amount of commissions he would receive on future sales.

■ Although the writings in evidence do not expressly state the beginning and ending dates of a particular one-year period, we find there is legally sufficient evidence, albeit circumstantial, from which a jury could make that determination. *See Templeton v. Nocona Hills Owners Assn., Inc.*, 555 S.W.2d 534, 539 (Tex.Civ.App.—Texarkana 1977, no writ) (holding that evidence was sufficient for jury to determine date employment was to begin). For example, if a jury, after hearing all the evidence, should determine the parties intended the one-year period to begin on October 29, 1996, the date of appellee's first letter, it could readily calculate the ending date of such term as being 365 days later. To the extent the meaning of the language used in these writings may be uncertain or doubtful, such uncertainty must be resolved against appellee because it is the entity that drafted the letters. *Republic Nat. Bank v. Northwest Nat. Bank*, 578 S.W.2d 109, 115 (Tex.1978); *Thompson v. Preston State Bank*, 575 S.W.2d 312, 315 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

Appellee relies heavily upon the decision of the Texas Supreme Court in *Montgomery County Hospital District v. Brown*, 965 S.W.2d 501, 503 (Tex.1998), which held an employer's oral assurances of job security not sufficiently specific enough to overcome the presumption of an employment at will. However, we find the facts in *Brown* distinguish it from the case at bar. In *Brown*, there were no writings that supported the employee's oral claim of an agreement for continuing employment. *Id.* In this case, there are writings in evidence that clearly delineate all essential terms of the parties' agency agreement except as to the intended duration of the relationship. Moreover, as distinguished from the circumstances in *Brown*, there is undisputed evidence in this case that appellee knowingly accepted the benefits of appellee's services as its sales representative for more than a half year after appellee acquired the Helikon company. As distinguished from the circumstances in *Brown*, there is no question in this case about the basic terms of appellant's agency agreement; the only fact issue for the jury is whether appellee intended to extend the

agreement for a one-year period and, if so, when that period began and when it ended.

We conclude there is a genuine issue of material fact regarding the issue of appellee's intent to enter into a one-year sales agency agreement and if the jury finds such intent, there is circumstantial evidence from which it might reasonably ascertain the beginning and ending dates of such one-year period. In view of the fact that the jury's determination of these issues will necessarily require an analysis of all evidence adduced at trial, we make no comment regarding the factual sufficiency or weight to be accorded such evidence.

■ Appellee also argues appellant acknowledged in his deposition that the sales agency agreement was terminable at will and that he could simply "walk away" from his representation of appellee. On the basis of this proposition, appellee contends there was no mutuality of obligation requiring appellee to fulfill a contractual commitment to appellant.

■ We disagree with this argument for several reasons. First, in appellant's summary judgment affidavit, he expressly denied having acknowledged in his deposition testimony that he could have terminated the agency agreement at will. In the deposition testimony relied upon by appellee, the appellant was asked:

Q: Okay, I'm just going to clarify. That is your belief, the, that you could terminate your agreement with Helikon at any time?

A. [Gaede] I'm just not sure, to tell you the truth.

Thus, the summary judgment evidence does not support appellee's claim that appellant judicially admitted he could, unilaterally, have terminated the agency agreement. Second, the summary judgment record shows appellee approved of appellant's continuing performance of his sales agent duties through the remainder of 1996 and well into 1997. A jury might reasonably infer from these circumstances that appellee intended to extend appellant's agency contract for the period of time expressed in the written communications. *See Irwin v. Irwin,* 300 S.W.2d 199, 203 (Tex.Civ.App.—Eastland 1957, no writ) (holding that parties' intent to create or extend agency relationship may be inferred from their conduct viewed in light of all circumstances surrounding transaction). Third, the issue of whether a contract is unenforceable for want of mutuality of obligation must be determined as of the time of the alleged breach, not at the time of the making of the contract. *United Appliance Corporation v. Boyd,* 108 S.W.2d 760, 764 (Tex.Civ.App.—Fort Worth 1937, no writ) (holding that even if contract lacks mutuality at time it is made, whole or partial performance may render it enforceable). Here, the summary judgment evidence shows that appellant, at his own risk and expense, continued to perform valuable services on behalf of appellee for a period of some seven months after the acquisition, and a jury might reasonably infer from the evidence that appellee knowingly accepted the benefits of appellee's services for a substantial portion of the extended contract term. Because appellee did not have the express contractual right to terminate the agency agreement unilaterally, before the expiration of the one-year term, appellant's part performance would constitute sufficient consideration to establish mutuality of obligation. *See Gable v. Frigidaire Corporation,* 121 S.W.2d 456, 459 (Tex.Civ.App.—El Paso 1938, writ dism'd) (holding that in absence of contractual right to cancel contract, even part performance may constitute sufficient consideration for its enforcement); *Park v. Swartz,* 110 Tex. 564, 222 S.W. 156 (1920); *Patton v. Wilson,* 220 S.W.2d 184 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.). In this regard, Texas courts have long held that expenditure of time and effort is sufficient consideration to make a unilateral contract binding and enforceable. *Sunshine v. Manos,* 496 S.W.2d 195, 198 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Miles v. Briggs,* 18

S.W.2d 850, 852 (Tex.Civ.App.—San Antonio 1929, writ dism'd) (holding that parties who knowingly receive benefits from agent's efforts cannot later deny their liability to him as principals).

### Conclusions and Holding

Based on our review of the summary judgment record, we conclude that a genuine issue of material fact exists regarding the parties' intent to enter into a one-year sales agency agreement and with respect to the beginning and ending dates of such agreement.

We also conclude that the three letters sent by appellee to appellant, when read together and considered in the light of the circumstances leading up to and surrounding the transaction, provide sufficient information to ascertain the essential terms of the parties' agreement. Further, we conclude that appellant's substantial performance under the alleged agreement, and appellee's knowing acceptance of benefits thereunder, constitute sufficient consideration to render the agreement mutually enforceable. Based on these conclusions, we hold appellee has not conclusively negated appellant's claim of a one-year sales agency agreement.

We reverse the trial court's judgment and remand the cause for trial.

FROST, J. dissenting.

FROST, Justice, dissenting.

The majority concludes that three letters from SK Investments, Inc. d/b/a Helikon Furniture Company[1] to Tom Gaede, taken together, "contain all the essential elements of a one-year sales agency contract." I respectfully disagree that the parties ever formed a binding or enforceable one-year contract, as Gaede failed to overcome the strong presumption of at-will status, and there was no mutuality of obligation to support a fixed-term agency agreement and no meeting of the minds on a material term.

### GROUNDS SUPPORTING SUMMARY JUDGMENT

### At–Will Status Not Negated

In finding a fact issue regarding appellee's intent to enter into a one-year sales agency agreement, the majority ignores the stringent standard Texas courts impose on contracts that purport to alter a party's at-will status. To contractually bind an employer to modify an at-will employment relationship, the employer must *unequivocally indicate a definite intent* to be bound not to terminate the employee except under clearly specified circumstances. *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). This rule should apply with equal force to a sales agency relationship.

In October 1996, in the first of the three letters, appellee stated that it expected "to continue with the current rep network for at least the next year." In the second letter, sent about six weeks later, appellee outlined the "terms" of Gaede's appointment as an independent representative for the company in its South Texas region. The third letter, sent in May 1997, announced appellee's decision to consolidate its sales force as of June 1997, effectively terminating Gaede's appointment. In this final letter, appellee agreed to continue to pay Gaede commissions for an additional six months following his termination, acknowledging its "commitment" made in September 1996 "to make no changes for one year." These letters fail to negate appellant's at-will status.

The first letter merely states appellee's expectation that the "current rep network" would stay in place for a year. Even had the letter stated that appellee expected

---

1. The majority uses "Helikon" to refer to appellee. However, appellee did not acquire the stock but only the name and other assets of Helikon Furniture Company, Inc. Appellee did not assume Helikon Furniture Company, Inc.'s existing obligations, and thus was not a "predecessor of Helikon" for purposes of Gaede's agency relationship with that company.

*Gaede's appointment* (as opposed to the "rep network") to be continued for one year, such an obscure and indefinite statement would not suffice as an unequivocal expression by appellee not to discharge Gaede during that period of time. While the second letter purports to "set forth the terms of [Gaede's] appointment as an independent representative," it fails to set out a specific duration of the appointment. More importantly, it fails to limit or otherwise modify appellee's right to terminate Gaede's agency relationship at any time. While the last letter, sent in conjunction with Gaede's termination, makes an oblique reference to "making no changes for one year," this statement cannot fairly be interpreted as a contractual commitment not to terminate *Gaede's appointment* for a year. Therefore, nothing in the summary judgment record shows a "definite intent" by appellee to commit, directly or indirectly, to retain Gaede for one year or to limit appellee's right to terminate Gaede's appointment "except under clearly specified circumstances." *Brown*, 965 S.W.2d at 502

Even the most generous and liberal reading of the three letters on which Gaede and the majority rely do not meet *Brown's* demanding standard. In *Brown*, the Texas Supreme Court made it clear that to overcome the at-will presumption, a contract must specifically and expressly convey the parties' mutual understanding and intent that the employer relinquishes its right to terminate the employee on an at-will basis. *Id.* One who has no formal fixed-term agreement cannot construct such an agreement out of indefinite comments, encouragements or assurances. *Id.*

Indeed, an employer's general promises or assurances not to discharge an employee, except for unsatisfactory performance or for "good cause," do not constitute a binding contract. *Id.* Surely, then, even less specific statements such as *"we expect to continue with the current rep network for at least the next year"* or we will *"make no changes for one year"* do not rise to that level. For this reason, the trial court did not err in granting summary judgment.

### No Mutuality of Obligation Or Agreement As To A One–Year Term

In order for a contractual term to be enforceable, the contract must evince a mutuality of obligations between the parties. *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386 (Tex.App.—Houston [14th Dist.] 1998, writ dism'd w.o.j.). Here, there is no showing of a mutuality of obligations between Gaede and appellee with respect to the duration of Gaede's appointment as a sales representative. According to the summary judgment evidence, Gaede himself believed that he could terminate the agency agreement at any time and walk away from his representation of appellee;[2] at a minimum, Gaede expressed uncertainty as to any obligation on his part not to "walk away."

As there was no definite obligation on Gaede's part to remain a sales representative for any specific period of time, there is no consideration for any obligation on appellee's part to maintain Gaede's appointment for a one-year term or any other fixed period of time. For this additional reason, there was no enforceable fixed-

2. In his deposition, Gaede gave the following testimony:

Q. At any time during this time period—that's set out—let's say from October 29th, 1996 on—could you terminate your relationship with Helikon or ICF Group?
A. I believe I could yes.
\* \* \*
Q. The question is, sir, did you feel that you were contractually bound, not morally, legally contractually bound to stay as a

Helikon or ICF Group independent manufacturer's rep beyond the time period October 29th, 1996, for a period of time, at any time? Could you terminate it at any time?
A. I believe I could.
\* \* \*
Q. The question is, sir, could you terminate your relationship with them [appellee]?
A. I guess I could.

term contract, and the agency appointment was terminable at will, by either party.

The majority, however, avoids this result by concluding that Gaede's "part performance would constitute sufficient consideration to establish mutuality of obligation." [3] In so holding, the majority completely overlooks that it is the *one-year term*, not the fact that Gaede had an agency agreement with appellee, that is at issue. Appellee does not dispute that it contracted with Gaede; rather, it disputes that the parties had anything other than an at-will relationship. The majority's reliance on cases holding that the "expenditure of time and effort is sufficient consideration to make a unilateral contract binding and enforceable" have no application in this context.

The fact that Gaede continued to perform "his sales agent duties through the remainder of 1996 and well into 1997" has no bearing on whether appellee was contractually committed to retain Gaede for a one-year term. Indeed, an agent in an at-will relationship could work for decades for his principal and that would not alter the at-will nature of the arrangement. [4] The majority cites no cases to support the notion that a one-year term may be imposed on a contractual relationship based on one party's "partial performance." Application of such a rule in this context flies in the face of *Brown's* holding that any agreement to alter one's at-will status must be express and specific. In fact, the majority turns *Brown* on its head in concluding that "[b]ecause appellee did not have the express contractual right to terminate the agent agreement unilaterally, before the expiration of the one-year term, [Gaede's] part performance would constitute sufficient consideration to establish mutuality of obligation." The majority's analysis as-sumes the very fact it insists a jury should determine—the parties' intent to enter into a one-year contract.

Moreover, a one-year sales agency contract does not exist here because Gaede failed to establish at least one material term—the commencement date of any one-year appointment. *See Rios v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex.App.—Corpus Christi 1996, writ denied) (holding that letter stating an annual salary did not embody the terms of any agreement between the parties as it did not specify a beginning date, duration of time, and did not require acceptance signatures.). Notably, Gaede concedes the length of his appointment would constitute a material term of any fixed-term contract with appellee, yet there is no agreed term of appointment in the letter purporting to spell out the "terms" of the agreement or in either of the other two letters that form the basis of his claim. In fact, Gaede's own summary judgment evidence utterly belies the notion that the parties ever agreed on a one-year term.

In his affidavit, Gaede claims he was wrongfully terminated before the end of the one-year period, yet he inexplicably calculates the one-year period from his termination date in June 1997, rather than from the date of the first letter in which appellee stated that it "expected to continue the rep network for at least the next year." In his deposition, Gaede testified "the contract" entitled him to commissions through the end of June 1998, a date approximately *twenty months* after the October 1996 letter and *thirteen months* after his date of termination. Even if the language of the October 1996 letter could somehow be read to create a one-year contract, the contract period would have

---

3. Gaede made no such assertions in appellant's briefing.

4. Furthermore, as noted above, the majority's conclusion that "a jury might reasonably infer from these circumstances that [appellee] intended to extend [Gaede's] agency contract" is wholly inconsistent with well-settled law that requires an *express* agreement to alter the at-will relationship. *See Brown*, 965 S.W.2d at 502.

ended in October 1997.[5] Gaede failed to produce any summary judgment evidence that appellee contractually limited its right to terminate him for the twenty months following the October 1996 letter. While the majority finds it should be up to the jury to ascertain the length of the appointment, under Texas law, the jury may not be called upon to construe the legal effect of an agreement or to supply an essential term upon which the parties did not mutually agree. *See Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 814 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *see also Univ. Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ).

Gaede failed to produce any summary judgment evidence that would show, in a clear and specific manner, that appellee agreed to retain him as a sales representative for one-year following his appointment as its independent agent, let alone one-year following the day he was terminated as appellee's representative. The inescapable conclusion is that Gaede and appellee never agreed on a length of appointment. Absent an express agreement on this material term, there is no one-year contract, and the granting of summary judgment in favor of appellee was proper.

### CONCLUSION

Generally, where the existence of an agreement is disputed, the issue of whether the parties reached an agreement is a question of fact.[6] However, even where there exists particular proof of a contract's existence, such proof may be insufficient, as a matter of law, to create a contract. *See Brown,* 965 S.W.2d at 502. This is such a case. Even indulging every inference in favor of Gaede, the summary judg-

ment record does not yield a genuine issue of material fact as to whether the parties entered into a one-year agency contract. The letters upon which the majority relies are not sufficient, as a matter of law, to negate the existence of an at-will relationship. Furthermore, there can be no one-year contract because the parties failed to agree on a material term. Therefore, the trial court was correct in granting appellee's motion for summary judgment, and that decision should be affirmed.

---

**5.** Gaede's claim to a one-year contract is not only unsupported by the correspondence but also defies logic because he claims he entered into a contract in October, 1996, which lasted through June 30, 1998, but admitted in his deposition that the end date of the contract was never even mentioned until he received the notice of termination in May 1997.

**6.** *See, e.g., Preston Farm & Ranch Supply, Inc. v. Bio–Zyme Enters.,* 625 S.W.2d 295, 298 (Tex.1981); STATE BAR OF TEXAS PATTERN JURY—CHARGES BUSINESS, CONSUMER & EMPLOYMENT PJC 101.1, 101.3 (1997) (jury question and instruction on existence of agreement).