Reversed and Remanded and Plurality and Dissenting Opinions filed May 17,
2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01016-CV

___________________

 

Avasthi & Associates, Inc.,
Appellant

 

V.

 

Ashish K. Banik, Appellee



 



 

On
Appeal from the 164th District Court

Harris County,
Texas



Trial Court Cause No. 2008-20366

 



 

 

PLURALITY OPINION

            This is an appeal from the granting of a motion for
summary judgment.  Because we conclude the trial court erred when it granted
appellee Ashish K. Banik’s motion for summary judgment, we reverse and remand
for further proceedings in accordance with this opinion.

Factual and Procedural
Background

            On
January 28, 2008 appellant, Avasthi and Associates, Inc. (“Avasthi”) and Banik
executed a contract entitled: Independent Contractor Agreement (the
“Agreement”).  Pursuant to the Agreement, Banik agreed to perform services
including “[o]il & gas field petrophysical and geological studies,
integrated asset modeling, improved/enhanced oil recovery, and related studies,
and training.”  In addition, the parties agreed to the following:

3.4       [Banik] agrees to submit monthly invoice by 3rd
of the month for any consulting work performed by [Banik] during the previous
month, and, as full and complete consideration for consulting work performed by
[Banik], [Avasthi] agrees to pay [Banik’s] invoice within fifteen (15) days of
[Avasthi] receiving payment from its Client for invoice submitted by [Avasthi]
for consulting work performed.  [Avasthi] has written agreements with its
Clients for payment of [Avasthi’s] invoices for consulting work performed
within thirty (30) days after receipt of its invoices by its clients.

22.       COMPENSATION

Before start of any assignment, [Avasthi] shall provide
[Banik] a Work Directive, in the attached Schedule-A format, describing the
scope of work and compensation that will be paid to [Banik] for working on that
assignment.  As compensation for the services rendered on the specified
assignment, during the term of this Agreement, [Avasthi] agrees to compensate
[Banik] according to the fixed amount of the billing rate agreed to on the Work
Directive for the specified assignment.  After the Work Directive has been
signed and dated by [Banik] and by [Avasthi] it shall be deemed incorporated
herein by reference for all purposes.  [Avasthi] shall be entitled to withhold
or off-set any damages it may incur, or other payments owed to [Avasthi] by [Banik],
against any compensation due to [Banik], if, in the sole discretion of
[Avasthi], such damages have been caused by the errors or omissions of, or any
other damage or loss caused by, [Banik], in particular, [Banik] agrees that no
compensation is due for work that is not performed or is not acceptable to
[Avasthi] or its Clients.

Finally, the parties agreed in
section 13 of the Agreement that “[a]t any time [Avasthi] and [Banik] will each
have the right to terminate this Agreement at [Avasthi’s] or [Banik’s]
respective convenience by giving the other at least 45 (forty-five) days
written advance notice.”

            On February 7,
2008 Banik and Avasthi executed a “Work Directive.”  Under this Work Directive,
which was incorporated into the Agreement by virtue of section 22, Banik agreed
he would provide petrophysical multi-mineral analysis services to Repsol YPF
Puesto Molina Field, an oil and gas field in Argentina.  In exchange, Avasthi agreed
it would pay Banik $100.00 per hour.

            Banik commenced
working under the Agreement in February 2008.  When he had not received any
payment for the services he performed in February and March 2008, Banik
resigned on April 1, 2008.  It is undisputed that Banik did not give Avasthi
forty-five days’ written notice of his decision to resign.

            Following Banik’s
resignation, Avasthi filed suit alleging Banik breached section 13 of the
Agreement by not providing forty-five days’ written advance notice.  Banik, in
turn, filed a counterclaim asserting Avasthi had breached the Agreement by not
paying Banik for the work he performed in February and March 2008.

            Asserting both
traditional and no-evidence grounds, Banik filed a motion for summary judgment
on Avasthi’s breach-of-contract cause of action.  Initially, Banik moved for a
no-evidence summary judgment on the ground that Avasthi had no evidence of
damages arising from Banik’s resignation.  Next, Banik moved for traditional
summary judgment on the affirmative defense that Avasthi had been the first to
breach the Agreement, thereby excusing Banik’s continued performance.

Finally, Banik moved for traditional summary judgment
arguing the Agreement was illusory and therefore unenforceable.  Banik began
his third summary-judgment ground by asserting that while the Agreement required
Banik to perform assigned work, the only thing Avasthi promised in return was
to pay Banik “within fifteen (15) days of [Avasthi] receiving payment from its
Client for invoices submitted by [Avasthi] for consulting work performed.”  Next,
Banik emphasized the fact that the Agreement does not contain an express
promise by Avasthi that it would submit any invoices to any client for work
performed by Banik.   Banik argued this renders the Agreement illusory and
unenforceable because Avasthi had the ability to nullify any contractual
obligation to pay Banik simply by choosing not to bill its client for Banik’s
services.

            The trial court,
without specifying the grounds, granted Banik’s motion.  Following the trial
court’s granting of his motion for summary judgment, Banik non-suited his
counterclaim which made the interlocutory summary judgment a final, appealable
judgment.  This appeal followed.

Discussion

            In two issues on
appeal, Avasthi challenges the three summary-judgment grounds asserted by Banik. 
However, in his response brief, Banik concedes
there are genuine issues of material fact on his first two summary-judgment
grounds, leaving the contention that the Agreement was illusory and
unenforceable as the only summary-judgment ground at issue in this appeal.

I.         The Standard of
Review and Applicable Law.

            While Banik moved
for summary judgment on both no-evidence and traditional grounds, the only
ground still at issue in this appeal was raised in his traditional motion for
summary judgment.  In a traditional motion for summary judgment, the movant has
the burden to show there is no genuine issue of material fact and it is
entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548 (Tex. 1985).  In determining whether there is a genuine
fact issue precluding summary judgment, evidence favorable to the non-movant is
taken as true and the reviewing court makes all reasonable inferences and
resolves all doubts in the non-movant’s favor.  Id. at 548–49.  If there
is no genuine issue of material fact, summary judgment should issue as a matter
of law.  Haase v. Glazner, 62 S.W.3d 795, 797 (Tex. 2001).  A defendant
who conclusively negates at least one of the essential elements of a
plaintiff’s cause of action is entitled to a summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798
(Tex. 2004).  A defendant is entitled to summary judgment on an affirmative
defense if the defendant conclusively proves all of the elements of the
affirmative defense.  Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999).  Once a defendant establishes its right to summary judgment, the
burden then shifts to the plaintiff to come forward with summary-judgment
evidence raising a genuine issue of material fact.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  We review a trial court’s
summary judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).

            In construing a
written contract, the primary concern of the court is to ascertain the true
intentions of the parties as expressed in the instrument.  Id. at 662. 
Ordinarily, the writing alone is sufficient to express the parties’ intentions
because it is the objective, not subjective, intent that controls.  Matagorda
Hosp. Dist. v. Burwell, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam).  To
achieve this, we examine and consider the entire writing in an effort to
harmonize and give effect to all provisions of the contract so that none will
be rendered meaningless.  Valence Operating Co., 164 S.W.3d at 662.  No
single provision will control; rather, all the provisions must be considered
with reference to the entire instrument.  Myers v. Gulf Coast Minerals Mgmt.
Corp., 361 S.W.2d 193, 196 (Tex. 1962).  We presume the parties to the
contract intended every clause to have some effect.  Fein v. R.P.H., Inc.,
68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)).  Contract
terms are given their plain, ordinary, and generally accepted meanings unless
the contract itself shows them to be used in a technical or different sense.  Valence
Operating Co., 164 S.W.3d at 662.  We construe contracts from a utilitarian
standpoint, bearing in mind the particular business activity sought to be
served.  Frost Nat’l Bank v. L & F Distrbs., Ltd., 165 S.W.3d 310,
312 (Tex. 2005).  We will avoid, when possible and proper, a construction which
is unreasonable, inequitable, and oppressive.  Id.  A contract in which
there is no consideration moving from one party to the other, or no obligation
upon that party, lacks mutuality and is unenforceable.  Kunz v. Machine Repair & Maintenance, Inc., 2001 WL 1288995, *3 (Tex. App.—Houston [14th Dist.]
2001, no pet.) (not designated for publication) (citing Texas Gas
Utilities Co. v. Barrett, 460 S.W.2d 409, 412 (Tex. 1970)).  However,
courts strive to construe a contract to promote mutuality and to avoid a
construction that makes promises illusory.  Young v. Netherlin, 102
S.W.3d 415, 420 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

II.        Did
the trial court err when it granted Banik’s motion for summary judgment on
Avasthi’s breach of contract cause of action?

Avasthi asserts that the trial court erred in
granting Banik’s motion for summary judgment on the basis that the Agreement
was illusory and therefore unenforceable.

We begin our analysis by examining the language of
the Agreement.  We agree with Banik that Section 3.4 of the Agreement does not
include an express provision requiring Avasthi to submit an invoice billing an
Avasthi client, such as Repsol YPF Puesto Molina Field, for Banik’s services. 
Because we must consider the entire Agreement, we disagree that the lack of
such a provision renders the Agreement illusory and unenforceable.  To accept
Banik’s argument regarding Section 3.4 would defeat the entire purpose of the
Agreement and require this court to construe the Agreement in a manner
producing an absurd result.  See Lane v. Travelers Indem. Co., 391
S.W.2d 399, 402 (Tex. 1965) (refusing to construe contract in a manner that
would produce an absurd result); see also Ill. Tool Works, Inc. v. Harris,
194 S.W.3d 529, 533 (Tex. App.—Houston [14th Dist.] 2006, no pet.)(stating a
court will not construe a contract to produce an absurd result).  Because there is a construction of the Agreement that
does not produce an absurd result, we decline to accept Banik’s construction of
the Agreement.

In Section 22 of the Agreement Avasthi agreed to compensate
Banik “according to the fixed amount or the billing rate agreed to on the Work
Directive for the specified assignment.”  This unequivocal promise represents
adequate consideration for Banik’s return promise to render services to Avasthi
and Avasthi’s clients.  See Northern Natural Gas Co. v. Conoco, Inc.,
986 S.W.2d 603, 607–08 (Tex. 1999).[1] 
In addition, the fact the parties did not execute a specific Work Directive
until February 7, 2008, several days after they executed the Agreement, does
not change this analysis because the determination of whether a contract is
unenforceable for want of mutuality of obligation is determined at the time of
the alleged breach, not at the time of the making of the contract.  Gaede v.
Six Investments, Inc., 38 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.]
2001, pet. denied).

Finally, despite Banik’s argument to the contrary, we
conclude Section 3.4 of the Agreement does not control Avasthi’s obligation to
pay Banik.  Instead, we conclude Section 3.4 establishes the deadline for Banik
to submit his monthly invoices to Avasthi and the timeframe within which
Avasthi would then be required to pay Banik, a requirement we hold is
established by Section 22 and the February 7, 2008 Work Directive.  This construction
fits within the overall purpose of the other parts found in Section 3 of the
Agreement: (1) Sections 3.1 and 3.2 require Banik and Avasthi to agree on a
timeline and budget for the completion of assigned projects; (2) Section 3.3 establishes
the requirement that Banik must submit weekly time reports to Avasthi; and (3) Section
3.5 establishes the type of expenses incurred by Banik that Avasthi would reimburse.

Because we conclude the Agreement is supported by
mutual, reciprocal consideration, we sustain Avasthi’s first issue on appeal.

 

Conclusion

            Having sustained
appellant Avasthi & Associates, Inc.’s first issue on appeal, we reverse
the judgment of the trial court and remand this case to the trial court for
further proceedings consistent with this opinion.   

 

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.  (Frost, J. Dissenting; Brown, J. Concurring
without Opinion.)

 









[1] In support of his
contention that the Agreement is illusory and unenforceable, Banik cites the
case of Kunz v. Machine Repair & Maintenance, Inc., 2001 WL 1288995,
*2 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (not designated for
publication). In Kunz, we held that because one of the contracting
parties had retained the power to nullify all contractual responsibilities owed
to the other contracting party, the contract lacked mutual reciprocal
obligation and was therefore illusory and unenforceable.  Id.  Because
we have determined the Agreement is supported by adequate mutual consideration
we conclude the Kunz case is distinguishable and does not control the
outcome here.